1

2

3

4

5

6

7

8              IN THE UNITED STATES DISTRICT COURT

9              FOR THE EASTERN DISTRICT OF CALIFORNIA

10   HERMAN SANCHEZ,

11              Petitioner,                No. CIV-S-10-2134 KJM CKD P

12        vs.

13   GREG LEWIS,

14              Respondent.            FINDINGS AND RECOMMENDATIONS

15   _____/

16              Petitioner is a California prisoner proceeding with a petition for writ of habeas

17   corpus under 28 U.S.C. § 2254.  He is serving a sentence of 25-years-to-life imprisonment upon

18   a Lassen County conviction for battery committed in a prison on a non-confined person; in this

19   case, Correctional Officer Doug Teach.  Petitioner asserts that at trial he was denied due process

20   of law as guaranteed under the Fourteenth Amendment when he was denied in camera review of

21   Officer Teach's California Department of Corrections and Rehabilitation personnel file.

22   Petitioner sought review of the personnel file for impeachment evidence.  In California, a motion

23   for in camera review of a police officer's personnel file for evidence of untruthfulness is called a

24   Pitchess motion after Pitchess v. Superior Court, 11 Cal.3d 531 (1974).

25   /////

26   /////

1

I. <u>Standards</u>

An application for a writ of habeas corpus by a person in custody under a judgment of a state court can be granted only for violations of the Constitution or laws of the United States. 28 U.S.C. § 2254(a). Also, federal habeas corpus relief is not available for any claim decided on the merits in state court proceedings unless the state court's adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).[1] It is the habeas petitioner's burden to show he is not precluded from obtaining relief by § 2254(d). <u>See</u> <u>Woodford v. Visciotti</u>, 537 U.S. 19, 25 (2002).

The "contrary to" and "unreasonable application" clauses of § 2254(d)(1) are different. As the Supreme Court has explained:

> A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in our cases, or if it decides a case differently than we have done on a set of materially indistinguishable facts. The court may grant relief under the "unreasonable application" clause if the state court correctly identifies the governing legal principle from our decisions but unreasonably applies it to the facts of the particular case. The focus of the latter inquiry is on whether the state court's application of clearly established federal law is objectively unreasonable, and we stressed in <u>Williams</u> [v. Taylor, 529 U.S. 362 (2000)] that an unreasonable application is different from an incorrect one.

<u>Bell v. Cone</u>, 535 U.S. 685, 694 (2002).

The court will look to the last reasoned state court decision in determining whether the law applied to a particular claim by the state courts was contrary to the law set forth

---

[1]  Title 28 U.S.C. § 2254(d) establishes a precondition to federal habeas relief, not grounds for entitlement to habeas relief. <u>Fry v. Pliler</u>, 551 U.S. 112, 119 (2007).

1   in the cases of the United States Supreme Court or whether an unreasonable application of such

2   law has occurred.  Avila v. Galaza, 297 F.3d 911, 918 (9th Cir. 2002).

3           A state court does not apply a rule different from the law set forth in Supreme

4   Court cases, or unreasonably apply such law, if the state court simply fails to cite or fails to

5   indicate an awareness of federal law.  Early v. Packer, 537 U.S. 3, 8 (2002).

6           "[W]hen a federal claim has been presented to a state court and the state court has

7   denied relief, it may be presumed that the state court adjudicated the claim on the merits in the

8   absence of any indication or state-law procedural principles to the contrary."  Harrington v.

9   Richter, 131 S. Ct. 770, 784-85 (2011).  "The presumption may be overcome when there is

10  reason to think some other explanation for the state court's decision is more likely."  Id. at 785.

11          Where the state court fails to give any reasoning whatsoever in support of the

12  denial of a claim arising under Constitutional or federal law, the Ninth Circuit has held that this

13  court must perform an independent review of the record to ascertain whether the state court

14  decision was objectively unreasonable.  Himes v. Thompson, 336 F.3d 848, 853 (9th Cir. 2003).

15  As long as "'fairminded jurists could disagree' on the correctness of the state court's decision,"

16  habeas relief is precluded.  Harrington, 131 S. Ct. 786.

17          In this case, petitioner's claim was denied on the merits on direct review, but no

18  court issued a reasoned opinion with respect to petitioner's claim.

19  II.  Background

20          On direct appeal, the California Court of Appeal summarized the facts related to

21  petitioner's claim as follows:

22          BACKGROUND

23          Since defendant's *Pitchess* motion was based primarily on the facts
            developed at the preliminary hearing, we shall examine the
24          testimony of that hearing in detail.

25  /////

26  /////

3

I. Preliminary Hearing Testimony

A joint preliminary hearing was held for the alleged participants in a small inmate riot at High Desert State Prison on January 14, 2005.  At the hearing, Officer Tom Sanchez [footnote omitted] testified to seeing Officer Santana having an argument with inmate Gallegos in the prison yard.  Gallegos was asked to go against the wall.  After complying with the order, Gallegos was asked for his identification.  Gallegos handed his identification to another officer with one hand, turned and swung at Officer Sanchez with the other, hitting him in the mouth.

As Officer Sanchez grabbed Gallegos, he noticed several inmates on top of Officer Doug Teach.  He went to help Officer Teach, but was intercepted by inmate Valdez, who left the attack on Officer Teach to attack Officer Sanchez.  Before he left to confront Officer Sanchez, inmate Valdez had been on top of Officer Teach's back, swinging at him.

Officer Sanchez did not know precisely how many inmates were on top of Officer Teach, but saw more than two.  He and the other officers involved in the riot discussed the incident before writing his report, but they did not write their reports together.  They wrote their reports "a couple days later" after the incident.

Officer Teach saw the incident with Gallegos and went to assist the officers involved with that inmate, when he remembered there was a full yard of inmates behind him.  As he turned around to order the inmates to take the ground prone position, Officer Teach saw two or three inmates approaching him.  One of the inmates, defendant, struck Officer Teach as he gave the order.

Officer Teach tackled defendant and another inmate to the ground. He was jumped by a third inmate as he wrestled the other two to the ground.  The third inmate on Officer Teach's back hit Officer Teach on his head and shoulders.  Officer Teach did not know how many more inmates attacked him.

During the incident, defendant was on his stomach in a snow bank and Officer Teach was on top of him.  As the incident concluded, Officer Teach and another officer handcuffed defendant before Officer Teach was escorted off the yard.  Officer Teach did not know defendant before the incident, but learned his name after consulting a diagram of the incident prepared by another officer. However, he could identify defendant by his looks, if not his name, just after the assault and when the officer testified at the preliminary hearing.

Officer Teach's report was written four days after the incident.  He talked to other officers about the incident before preparing his report, but did not look at the other reports before writing his, and

no one talked to him about including anything in his report.

Officer Teach lost his glasses some time after he first saw defendant.  This left his vision blurry due to his astigmatism.

Officer Thomas Cox testified that Gallegos was agitated because he had not been able to get into the canteen to get his store.  When asked to face the wall, Gallegos reluctantly complied and then turned to punch Officer Sanchez in the face.  Officer Cox started to wrestle Gallegos to the ground when he noticed Officer Teach being attacked by at least four inmates.  He saw inmate Gutierrez punching Officer Teach from behind, and two other inmates were under Officer Teach.

Officer Cox hit Gutierrez with a baton, causing him to stop attacking Officer Teach, and then handcuffed the inmate.  Officer Cox did not know precisely how many inmates were behind Officer Teach due to the commotion.

Officer Henry Kirkland heard an emergency call from another part of the yard.  He ordered his inmates down and ran along the catwalk to the other side of the yard.  From his vantage point on the roof, Officer Kirkland saw two inmates, Gutierrez and Montano, attacking Officer Teach.

Officer Kirkland saw approximately seven inmates attacking five guards.  For about five seconds, Officer Kirkland observed Officer Teach being attacked by the two inmates he identified.  Officer Kirkland never saw Officer Teach holding any inmates on the ground and never saw him attacked by more than two inmates.  He saw four other officers being hit, and saw no officers come to Officer's Teach's assistance.

Officer Kirkland observed the yard until all the inmates were prone on the ground, and saw no other officers rendering aid to Officer Teach.  The two inmates attacking Officer Teach were standing upright and Officer Teach was pulling on the inmates in an attempt to stop their attacks.

Officer John Gorbet saw several inmates attacking Officer Teach and he ordered all inmates to take the prone position.  The inmates went prone in two groups:  the uninvolved inmates complied immediately, while the smaller group of inmates involved in the assault did not immediately comply.  From a video of the aftermath of the riot, Officer Gorbet identified six inmates, including defendant, as members of the smaller group.  He saw all of the members of the smaller group, including defendant, attack Officer Teach.

/////

According to Officer Gorbet, the inmates swarmed Officer Teach, with more than five attacking him.  Officer Teach was standing on his feet, but was brought to the ground by the attackers.  Several warning shots were fired which slowed the attackers, but it did not stop the attack.  He also saw Officers Sanchez and Cox pulling inmates off of Officer Teach.

After being bound over for trial, defendant filed a *Pitchess* motion, seeking discovery of Officer Teach's personnel records and records of complaints including, but not limited to, "inmate complaints of misconduct or dereliction of duty, supervisory evaluations, internal affairs investigations, written warnings to Officer Teach and psychological testing and consulting records."

Defendant's justification for discovery were inconsistencies in the testimony at the preliminary hearing, Officer Teach being the only person to positively identify defendant as an assailant, and counsel's information and belief that "on or before the day Officer Teach wrote his report, Defendant received medical treatment including X-rays for a badly injured arm suffered at the time of his alleged participation in the incident."  After hearing argument, the court denied the motion without reviewing Officer Teach's personnel files.

Answer, Ex. A. at 1-3.

III.  <u>Analysis</u>

The Supreme Court has found the Due Process Clause of the Fourteenth Amendment requires that, upon request, a criminal defendant be provided by the prosecution with all evidence in their possession which is material to guilt or innocence.  <u>Brady v. Maryland</u>, 373 U.S. 83, 87 (1963).  Evidence is material if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceedings would have been different.  <u>U.S. v. Bagley</u>, 473 U.S. 667, 682 (1985).  Generally speaking, there is no <u>Brady</u> problem in this case because petitioner fails to point to any material evidence the prosecution failed to disclose.

In <u>Pennsylvania v. Ritchie</u>, 480 U.S. 39, 58 and n. 15 (1987), the Supreme Court found that a criminal defendant has a right to have the trial court review <u>in camera</u> files not available to the defendant as long as the defendant can provide a basis for believing that the file has material evidence.  The Supreme Court has never provided significant clarification as to what sort of showing a defendant must make to satisfy this requirement.

1    Regardless, petitioner's request that his trial court review Officer Teach's

2  personnel file was nothing more than a "fishing expedition" for evidence which might effect

3  Teach's credibility.  Petitioner made no specific showing to the trial court that any evidence in

4  Teach's file was material to petitioner's guilt or innocence.  As found by the Court of Appeal:

> Defendant's argument fails because he never alleged the specific
> scenario of officer misconduct establishing a plausible basis for
> discovering admissible evidence.
>
> The theory articulated in his *Pitchess* motion, that Officer Teach
> identified defendant as the perpetrator in order to shield the
> Department of Corrections and Rehabilitation from liability for
> defendant's injuries, is fantastic and unsupported by the facts
> adduced at the preliminary hearing.
>
> Although the evidence at the preliminary hearing was not
> consistent regarding the number or identity of Officer Teach's
> assailants, there is absolutely no evidence supporting the affidavit's
> implication that defendant was injured as an innocent bystander to
> the riot.  The only violence identified at the preliminary hearing
> was the inmates' assaults on Officer Teach and Sanchez, the
> officers tackling the inmates who had first attacked them, and
> Officer Cox hitting Gutierrez with his baton as the inmate was
> attacking Officer Teach.  Defendant's alleged injury actually lends
> credibility to Officer Teach's account, as it is consistent with
> defendant being wrestled to the ground by the officer and then
> caught underneath the pile of inmates attacking Officer Teach.
>
> Defendant's *Pitchess* motion does not, and cannot reasonably
> allege that Officer Teach falsified his report and testimony to
> shield himself from personal liability.  Rather, the *Pitchess* motion
> asserted that Officer Teach lied to his superiors and committed
> perjury in order to shield the "institution" from liability by naming
> defendant as his assailant.  He does not explain how evidence of
> reprimands from that same institution Officer Teach is allegedly
> trying to protect is somehow relevant to prove his theory of officer
> misconduct, or specifically how he was induced to allegedly lie
> about defendant's involvement in the prison riot.

22  Answer, Ex. A. at 10.

23    In light of the foregoing, the court finds that petitioner's due process claim lacks

24  any merit.  Furthermore, petitioner is precluded from obtaining relief by 28 U.S.C. § 2254(d) as

25  the court cannot find that California Courts' rejection of petitioner's claim: (1)  is contrary to, or

26  involved an unreasonable application of clearly established federal law as determined by the

1  Supreme Court of the United States; or (2) that rejection of the claim was based on an

2  unreasonable determination of the facts.

3          Furthermore, petitioner is not entitled to relief because he cannot show any

4  prejudice.  In order to obtain habeas relief, petitioner must show that the violation of a

5  Constitutional right at issue had a substantial and injurious effect or influence in determining the

6  jury's verdict.  Brecht v. Abrahamson, 507 U.S. 619, 637 (1993).  Because petitioner cannot

7  point to any evidence suggesting his guilt or innocence which petitioner's jury was not allowed to

8  consider, he cannot show the requisite prejudice.

9  IV.  Conclusion

10          For all of the foregoing reasons, the court will recommend that petitioner's

11  application for writ of habeas corpus be denied.

12          Accordingly, IT IS HEREBY RECOMMENDED that petitioner's application for

13  a writ of habeas corpus be denied.

14          These findings and recommendations are submitted to the United States District

15  Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty-

16  one days after being served with these findings and recommendations, any party may file written

17  objections with the court and serve a copy on all parties.  Such a document should be captioned

18  "Objections to Magistrate Judge's Findings and Recommendations."  In his objections petitioner

19  may address whether a certificate of appealability should issue in the event he files an appeal of

20  the judgment in this case.  See Rule 11, Federal Rules Governing Section 2254 Cases (the district

21  court must issue or deny a certificate of appealability when it enters a final order adverse to the

22  applicant).  Any reply to the objections shall be served and filed within fourteen days after

23  service of the objections.  The parties are advised that failure to file objections within the

24  /////

25  /////

26  /////

1  specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951

2  F.2d 1153 (9th Cir. 1991).

3    Dated: May 22, 2012

4                                                     _____
                                                      CAROLYN K. DELANEY
5                                                     UNITED STATES MAGISTRATE JUDGE

6

7
  1
8  sanc2134.157

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26